Next case is number 2010, 1337, Henry Fletcher. Mr. Fish. Yes, if it pleases the court, my name is Robert Fish and I'm here for the appellants and patent applicants. I can see by the courtroom that my case is somewhat less of national importance than perhaps the other cases. However, it's important to our clients and we're hoping that this case is simpler and won't take quite so much time. Unless the court has specific questions, I would like to go right ahead into addressing the key difference between the claim subject matter of the patent application and the prior arts. That key difference is whether the buyer, who is referred to as the reseller in the pending application, takes a high risk of buying defective goods. In the prior art reference, the only reference really is Kocher, and in that reference there's five steps. There's a value determination, which is made by a computer or by a person. The seller makes an offer to sell his goods according to that price that's set by the value determination. There's an inspection, which can either be routine and minimal or it can be according to special instructions. Then the buyer makes an offer to buy, that is after the inspection. And then the seller can accept that offer or not accept it. So there's an offer to sell, then there's an inspection, then there's an offer to buy, and then there's an acceptance or rejection of that offer to buy. And the key language is really, for all of the things I'm going to talk about today, is on page A228, which is page 5 of the Kocher reference. In paragraph number 0105 on the right-hand column, starting at line 20, I'll read the one sentence. Quote, the pawning or selling customer 1, that's the seller, is informed of the final price, and the customer 1 has the option to accept the value or request that the thing be shipped back. End quote. So the point is that at the time that the seller makes their offer to sell and the goods are shipped, there is no agreement, there's no final agreement. Because there is no final agreement, because the buyer doesn't have to buy it. The buyer will examine the product, either cursorily or in some kind of substance, and then give a final price. In the pending application, the only independent claim is claim 1, There's really three steps. There's a value determination, which in this case is made by a computer. The buyer makes an offer to buy. It would be helpful, I think, if you went straight to the rejection and the prior art that was cited and explained your position. Oh, I'm sorry, I thought I did that. The only prior art cited was Kocher. And in Kocher, as I thought I mentioned, there was not a firm offer to buy until after the goods were received and examined. But the rejection was based on obviousness. Yes, yes, I agree with that, Your Honor. So given the fact that in our system the buyer is taking a risk of getting defective goods, under our system, I could go to the computer, go to their system, go to their website, and say, I've got a Pentium whatever computer. You're going to buy it for $500, and that's their offer to me. That's the buyer's offer to me. It's a firm offer because I can accept it, and I accept it by sending them the goods. I send them the goods, they send me $500. If the computer doesn't work or it's completely defective, they still owe me $500. Now they can sue me for fraud or whatever, but it was a firm offer to sell. But typically in cases, and they occur all the time, in which there is a completed transaction, the transaction is voidable if the option of the purchaser, if the purchaser discovers that the warranty of merchantability or the representations as to the condition of the good turn out not to be viable. So I wonder whether there's a real distinction between inspection that occurs before the final price is agreed upon or inspection that occurs after the final price is agreed upon in which the price is subject to adjustment or the transaction is subject to negation simply upon a discovery of noncompliance with representations. I think I understand the question. And I think the answer is when is the contract made and who takes the risk? And the argument of the appellees is that there's really no difference to cite to your argument that there's no really difference between an offer to buy and an offer to sell in this regard because it's voidable anyway and so forth. But I would say that in this case what we're trying to claim is that there is a difference. We're trying to, and in the specification we specifically talk about, that we're dealing with contract law here. Either there is a contract or there's not a contract. And the contract, what we mean by a fair reading of the patent application is that what we mean by a firm offer to buy is that it's an offer that can be accepted under normal contract law. So that I say I will buy it for, the system says they'll buy it for $500. I send them the goods. A contract is in place at that time. They owe me the $500. Now if I send them defective goods, which actually can happen quite frequently under that kind of a system, there is a contract. They owe me the $500. If they want to void that contract, they have to allege fraud. They have to do whatever, go to court and invalidate the contract. But there is a contract in place. In the prior art, there's no contract. What happens is the seller provides the goods. They get inspected. And if the buyer doesn't want the goods, if they're defective in some way, the buyer says, well, we said we were going to pay $500 for it, but it's only worth $10. Well, actually what they probably would do is that they probably would not send you the check until they'd actually looked at the goods. And then it'd be on you to sue them for the $500. I mean, I know on eBay people sometimes send the check before they get the goods, but then eBay has, I guess, a dispute resolution process. Well, but that's the distinction we're making. And to cite to Judge Newman's question about obviousness, the rejection was not anticipation, even though the appellees argued it as if it were anticipation. The claims are clearly not anticipated, as I just mentioned. The question really is obviousness. And I would submit that it's not obvious for a company that's engaged in this and trying to make a profit to set up a website where they say they're going to pay for goods, they enter into binding contracts to buy those goods even before they see them. Now it is true that, for example, any of us can go to eBay, and whether it's an auction or some other system, we can bid or buy a used goods. And we buy the goods, they get delivered, and it's a binding contract. If I buy a used bicycle from someone on eBay, I bought those goods. It's a binding contract, and they send me the goods, and I'm supposed to send them the money. And if I don't send them the money, then they can sue me for that money or take whatever other legal action they want. But it is a binding contract as of that point. And I'm willing to do that. I'm willing to buy a bicycle on eBay because it's $50 as opposed to $800 new because I'm willing to risk that I'm going to lose my $50. It might be defective goods, and I'm just willing to take that chance. Here we're talking about the claims recite having this website and having this automated purchasing system. So there's clearly a business going on that's trying to make a profit off this. And whereas I, as an individual, might be willing to buy a bicycle for $50 that's an $800 bicycle, not knowing whether it's really going to be a good bicycle or not, I'm willing to take that risk. It's not logical for a business to do that. It's not obvious that a business would be willing to take that risk. And what I pointed out in one of the papers is that with the probably tens of millions or hundreds of millions or billions of transactions that we've seen on the web, we've never, ever, ever seen a single company, besides the company that's filed for this patent application has now been bought by Best Buy, ever do that. It doesn't make any sense. From a logical standpoint, to be buying things, I mean, I can just imagine, I might say to you, I'm going to sell you my car for $50,000, whatever, and I make that offer, or you offer to buy my car for $50,000. At the risk of that, given our salaries. Why don't you say $15,000? Now we're more in the realm of reality. Maybe we should talk again about the $50 bicycle. Right. Let's talk about the $50 bicycle. Okay, so, you're willing to buy the $50 bicycle, but the reason I used the car example is you're going to want to see the car. I can't, even when a car dealership says, which is a business, so it's a little bit more accurate. A car dealership says, we will pay you $500 for any car you bring in as a trade-in. Regardless of its condition, tow it in, drive it in, whatever, we'll give you $500. Well, that's an offer to buy something unseen, and they will pay you $500. But they're not just going to buy the car for $500, it's in connection with a car they're going to sell you. In other words, a trade-in. And so what they're saying in that case is, we really don't care, we assume you're going to bring in something that's worth zero, we're just going to give you $500 off on the new car, which is a slightly different issue. Here, you've got a business which is saying, there's tens of thousands of items out there, computers and cameras and all these different things, we're going to set a price for these used goods, and whether they work or not, regardless of anything, we will buy them for the stated price. And whether they have, which is what I've been told, maybe 20% of the goods are absolutely worthless, and they throw them in the trash, they still buy them for that price. And they don't go after the people, it's a contract, they said they would pay $50 or $500 or whatever it is, and that's what they pay. Which is mind-boggling. And that's completely non-obvious that someone would enter into that kind of an agreement. And that's what we've claimed. So if I could move on to just a few other quick points. To me, that's sort of a factual question. In a previous case this morning, someone was asking about what were the factual issues versus the legal issues. In our mind, there's three factual issues. One is that the appellees say, and the patent office says that, Kocher teaches an automated buyer making a firm offer to buy without first examining the goods. And we think that's an error. Because they always examine the goods first. And it's not a firm offer to buy. So for two reasons that's factually incorrect. Then they've made the argument on appeal that an offer to buy is basically the same thing as an offer to sell. And in this context, it's not. Because the buyer knows the value of the fungible goods, knows whether it's garbage or not. The buyer doesn't. The seller knows, but the buyer doesn't. Therefore, in this context, an offer to buy is very different from an offer to sell. Third factual issue has to do, and there's also a legal issue here, has to do with the official notice. And to me, that's the only really interesting legal issue here. The patent office gave legal notice that it's common to buy goods in e-commerce prior to inspection. And we said that's true. And I think that is a true statement, and we're not denying that. The legal issue here is to what extent is an applicant admitting to an official notice to the extent of an official notice? And I would say that the test should be you're admitting to a reasonable interpretation of the official notice. Let me give you two examples. If the patent office on some application gave official notice that Alaska has cold weather, I wouldn't argue about that. Of course Alaska has cold weather. Does that mean every part of Alaska has cold weather on every day of the year? No, that's an unreasonable interpretation, and I don't think it's fair to hold me to that interpretation. Or if the patent office says New York City is crowded, yes, there are parts of New York City that are crowded unquestionably, and I wouldn't argue that New York City is crowded generally. But there has to be parts of New York City in which a person has never set foot. It's not crowded at all. So here when the patent office says it's common to buy goods in e-commerce prior to inspection, that's true, and we gave the example of eBay. I've bought things on eBay prior to inspection, and I've been disappointed sometimes, but it is what it is. That doesn't mean it's obvious, or that doesn't mean we're admitting that eBay is doing what's being claimed. Here what's being claimed is not simply buying. If I said a method of buying goods comprising the single step of buying goods in e-commerce prior to inspection, that claim would be invalid. That's not what we're saying. The rest of the claim says you have to set up this website, and you have to have this automated purchasing, etc., etc. There are many other factors, all of which together, I think a reasonable interpretation of the claim is what we're dealing with is a profit-making business that's doing this regularly, and it's non-obvious to do this regularly. In fact, it's even questionable whether it even makes money. So in those senses, it's non-obvious. And let's see if I have... Yes, it is. We'll save you a couple of minutes for rebuttal, Mr. Fish. Thank you. Ms. Zellweger. May it please the court. Substantial evidence supports the board's finding that Coachra teaches issuing a firm offer at a set price prior to physical examination. This is the only element of the claim that's in dispute. The substantial evidence is in the Coachra reference. It's at page 228, paragraph 104. But obviousness is a matter of law, and so it's reviewed objectively? Yes, Your Honor. And if I could just point to you in that paragraph, Coachra describes an artificial intelligence system that provides a seller with the price of a good and, in quote, backs up that price with an instant option to sell for that price. So this instant option to sell is a firm offer at a set price as recited in Fletcher's claim because it's at that price. It's not at a price or some price or a variable price that I'll figure out in the future. It's at that price, so it meets that element of the claim. It's also prior to physical examination because it's instant. What happens in Coachra prior art is that a person is sitting at home, and let's say they want to sell their laptop computer. They log on to the system. They enter a bunch of parameters about their laptop, the age, how much memory it has, what the processing speed is. The computer system looks in its database, and it says, okay, this computer is worth $100. And it tells the person sitting at home, your computer is worth $100. And it gives the seller at home the option to sell that computer to it, to Coachra's system for $100. So contrary to what Fletcher's attorney is saying here today, it's not the seller sitting at home giving the offer. It's the computer system that's giving the offer, telling the person sitting at home, will you sell it to me for $100? So the only element of the claim that's in dispute is expressly taught by Coachra. Now Coachra has, in the next paragraph, 105, a description of the inspection process, either the simple inspection or the more specialized appraisal. Now, is it your view as you read Coachra that that is an inspection which occurs prior to the formation of a binding contract or after the formation of a binding contract by way of determination as to whether there's been a misrepresentation that would void the contract? It's the latter, Your Honor. In this alternative embodiment, it occurs after the issuance of the firm offer. And if I could just point to what's actually claimed here. What's claimed is the reseller operating an automated purchaser that issues a firm offer to purchase prior to physical examination. There's no requirement that the person sitting at home accept the offer. There's no requirement that purchase be made. There's no requirement that money change his hands. The only thing that's required is that the computer system issue a firm offer. And this is exactly what happens in the alternative embodiment of Coachra. The person, as I explained, the person sitting at home enters in a bunch of information. The computer system says, will you sell it to me for $100? The computer system has given the firm offer and that's all the claim requires. The person sitting at home just has to say, yes, I accept that offer for $100 and the claim has been satisfied. The claim also goes on to say wherein the firm offer needs nothing further than acceptance to create a binding contract. Exactly. And the person sitting at home, again, this is an instant option to sell. The person sitting at home, all they have to do is say yes. And then as... Whether they opt to inspect is a separate question. Right. So let's say that for the sake of argument that in this alternative embodiment the item goes to the warehouse and it is inspected. Now this inspection is... And let's say that the person from home sends in the thing they said that they were going to send in. It's exactly... What they send in is exactly as they have described it. Then nothing changes about the contract. Presumably the money changes hands and the contract is performed. Now let's say that the person sitting at home sends in junk. Well, the computer system, Kocher's computer system has ordinary contract remedies. It can refuse to pay. It can... Or it could refuse that contract but say, hey, I still... Maybe I still want what you have. I rescind this contract, but I'll give you a new offer for a new price for what you actually sent in. Now they... Fletcher's attorney seems to make some sort of distinction between Kocher and what they have as in the definition of their binding contract is if you send me in junk, I still have to pay you $100 or whatever I promise to pay. And that's just not in the claim. The claim is just I send you a firm... The computer system gives a firm offer. And that's it. It doesn't say, and by the way, I don't have any ordinary contract remedies. And alternatively, if you don't agree that Kocher doesn't give a firm offer prior to inspection, let's say that for the sake of argument, Kocher only gives a firm offer after inspection, which I think is what they're arguing. Then as the board found, the claim would still be obvious over Kocher in view of official notice. As the board said, one skill in the art would be motivated to simply move the firm offer from after inspection to before inspection in order to increase the speed of the transaction. As the examiner pointed out, it's well known in the art to not inspect things that you buy off the Internet until after you purchase them and after you receive them. So this is not something that's outside the ordinary skill of an artisan. This is something that happens every day on the Internet. And applicants haven't come forward with any sort of evidence saying that this would not be obvious. All they say is, well, if it's so obvious, why didn't somebody do it before? Well, I submit that Kocher does do it. Kocher has this alternative embodiment where you sit at home, you enter in all this information, and Kocher's computer system says, I'll buy this from you for $100. It has all the elements of the claim. It has the database. It has the electronic interface. And it has the firm offer prior to physical examination. I think that's all the points I wanted to make, so if there are no further questions, thank you. Thank you, Ms. Seward. Mr. Fish, you have a couple of minutes. Yes, in rebuttal, I really only have four points. The first point is that the government here is arguing that Kocher says that the buyer can refuse to pay and that there's deals with contract remedies. The buyer has the contract remedies. None of that is in the specification of Kocher. She's just making that up. Nor is it inherent, because at least my understanding of the law of inherency that this court has set forth over many, many years is that if there are multiple... I may be misunderstanding what you said. I thought you said that she was... Ms. Seward was talking about Kocher. I think you mean that she was saying that the applicant had contract remedies, right? Okay, I misspoke. Okay, good. We're back on the same page. Go ahead. Let me rephrase the argument then. Go ahead. The distinction here is being made that... or I think the attempted distinction is that... and I think, Judge Bryson, you mentioned this before, in terms of form over substance again, there's no real difference between having a contract and then having contract remedies and not having a contract in the first place. And I would say that's just not contract law. Well, you may be right about that, and I'm sure that when I said that I could almost hear Corbin and Williston both turning over in their graves. But I think Ms. Seward is making a different point. She is saying that even given the formalities here, that Kocher has the same formality that the application has, where in the alternative embodiment there is an instant option to sell, which occurs prior to the inspection. Which option, at least implicitly, when you talk about an instant option to sell, sounds like an offer that can be accepted. And if accepted, leads to a firm contract, after which there is inspection. Why isn't she right about that? Well, I think she's wrong about that. She bases that argument on one of the figures. Well, there's language at the one, two, three, four, five lines up from the bottom of... No, I see that. And I understand that that's the exact wording, an instant option to sell. But it doesn't define what instant option to sell is. And what I would say is that if you read then the next paragraph, 105, it explains the instant option to sell. It says, starting on line 15 on the right-hand column, once a thing's condition has been confirmed through simple inspection or detailed appraisal, then so-and-so people are informed and the item is moved to storage or repaired or whatever, and then the pawning or selling customer is informed of the final price and the customer has the option to accept. So going back to contract law, it sounds like a law school test where is it the purchase order that controls or the sales order that controls and which one is later and which one has the language that no matter what, my order controls. And all that is contract law. And what we're saying here is there's a real distinction because this is the crux of the distinction, that our claim is saying you make a firm offer to buy this and no matter what the condition of the goods, you have to buy it. Now there may or may not be contract remedies, but you've made a firm offer, it can be accepted. In their case, there's what's called this instant option to sell, but what they mean by that is an offer to try to sell. It is not immediately accepted by the buyer. After the buyer looks at the goods, then the buyer goes back and says we will buy this for this price. I understand the claim. It says that a firm offer is made that needs nothing further than acceptance to create a binding contract. Correct, and that's what we mean by firm offer. But the claim doesn't say that must be accepted. No, it doesn't. But what they're dealing with is a firm offer to sell, even if you accept their arguments. And ours is a firm offer to buy, and they're two different things. I'll sell you things all day if I can make a firm offer to sell, and you will accept my offer. Because I know the condition of the goods, so I'm very comfortable making a firm offer to sell. You don't know the condition of the goods, so you're not willing to make a firm offer to buy. So at the very most, what they're saying with this instant offer to sell is a firm offer to sell. I don't think it's a firm offer to sell, but let's say for sake of argument it is. It's a firm offer to sell, not a firm offer to buy, which is what is claimed. We just had this whole discussion here this morning in another case, when you're dealing with should the terms of the claims control or should what the person was trying to get at control? And I think the Federal Circuit, and I've always appreciated this, has said, look, if you attorneys want to write claims that are decent, that's your responsibility. You have to look at the claim language, otherwise the whole system falls apart. You've got to look at the claim language, and the attorneys have to be responsible for that. We specifically are asserting a firm offer to buy, not a firm offer to sell. I think we should be held to what we say, and everybody else in the world should be held to what we say, because that's what we said. Otherwise, the system falls apart. Any more questions for Mr. Fish? Any more questions? Thank you. Thank you, Mr. Fish, and Ms. Sowert. Case is taken.